UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY L.,[1]

    **Plaintiff,**

v.                                          Civil Action 1:22-cv-605
                                                   Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

    Plaintiff, Anthony L. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply Memorandum (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and that the Commissioner's decision is **AFFIRMED**.

                                                  **I.    BACKGROUND**

    Plaintiff was awarded disability benefits as a child. As required by 42 U.S.C. § 1382c(a)(3)(H), the Commissioner redetermined Plaintiff's eligibility benefits under the rules for determining disability in adults when Plaintiff attained the age of 18. After continued benefits

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held an online video hearing on January 26, 2022, and issued an unfavorable determination on February 16, 2022. That unfavorable determination became final on August 17, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts a single contention of error: that the ALJ's RFC determination was not supported by substantial evidence. In particular, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's educational accommodations as required by Social Security Ruling 11-2p when assessing Plaintiff's mental RFC. (Pl.'s Statement of Errors 8–20, ECF No. 12.) The undersigned disagrees.

## II.     THE ALJ'S DECISION

On February 16, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17–31.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

since September 26, 2016, Plaintiff's alleged disability onset date. (*Id.* at 21.) At step two, the ALJ found that Plaintiff had the severe impairments of leg length discrepancy, congenital right foot toe amputations/club foot, posttraumatic stress disorder, major depressive disorder, substance abuse disorder (alcohol), and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21–24.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and/or walk for 2 hours in an eight-hour day. He can occasionally use the right lower extremity for foot controls. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, kneel, crouch, and crawl. He should avoid all exposure to hazards such as dangerous machinery and unprotected heights. He can understand, remember, and carry out 3 to 4-step tasks. He can have superficial interactions with supervisors and coworkers. He would need a static work setting.

(*Id.* at 24.) The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that there are jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could also perform, such as document preparer, hand mounter, and semiconductor bonder. (*Id.* at 29–30.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 30–31.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff raises a single issue in his Statement of Errors (ECF No. 12): that the ALJ's RFC determination was not supported by substantial evidence. In particular, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's educational accommodations as required by Social

Security Ruling 11-2p when assessing Plaintiff's mental RFC. (Pl.'s Statement of Errors 8–20, ECF No. 12.) The undersigned disagrees.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity.") Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

The ALJ's mental RFC is supported by substantial evidence. The ALJ relied on an October 2017 consultative examination by Nancy Schmidtgoessling, Ph. D., who assessed Plaintiff as having a Full Scale IQ of 72, placing him at the borderline range of intellectual functioning, and opined that Plaintiff would do best with simple, routine tasks. (R. 29, citing R. 593–602.) Dr. Schmidtgoessling also found that Plaintiff was able to understand and follow directions but at times asked for repetitions of questions, which appeared to be caused by Plaintiff's limited concentration/attention. (R. 27, citing R. 593–602.) The ALJ further relied on a February 2018 diagnostic assessment at Greater Cincinnati Behavioral Health Services, in which Plaintiff demonstrated normal intellectual functioning and cognition/memory but with poor insight and judgment. (R. 27, citing R. 858.) The ALJ also relied on the opinions of the state agency psychological consultants, who opined that Plaintiff is able to understand and remember simple, 1–2 step, instructions as well as more complex 3–4 step, instructions; that he is able to maintain attention sufficient to complete simple 1–2 step, tasks as well as some more detailed 3–4 step tasks; that he can relate to coworkers and supervisors on a superficial and occasional basis; and that he can carry out tasks in settings where duties are relatively static and changes can be explained. (R. 29, citing R. 606, 813.) Subsequent treatment notes from Greater Cincinnati Behavioral Health Services document normal mental status examinations in April 2019 and February 2021, noting that memory and attention were intact. (R. 27, citing R. 823, 945.) A mental status examination by Plaintiff's primary care physician in May 2021 also reflected normal findings. (R. 28, citing 1170.)

The opinions of consultative examiners, state agency reviewers, and the treatment notes of Plaintiff's treating mental health professionals are substantial evidence on which the ALJ may rely to support the RFC determination. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830,

839 (6th Cir. 2006) (consultative examiner's opinions constitute substantial evidence); *Hefflin o.b.o. LDS v. Kijakazi*, No. 1:20-cv-1414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases for the proposition that "State Agency opinions may constitute substantial evidence supporting an ALJ's decision"); *see also* 20 C.F.R. § 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants); *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) (a physician's treatment notes constitute substantial evidence). The ALJ's conclusion that Plaintiff could understand, remember, and carry out 3 to 4-step tasks, with only superficial interactions with supervisors and coworkers in a static work environment, was therefore supported by substantial evidence.

Plaintiff contends that the ALJ failed to comply with SSR 11-2p by failing to assess further limitations based on Plaintiff's history of requiring multiple accommodations in his schoolwork. Specifically, Plaintiff points to an Evaluation Team Report ("ETR") and two Individual Education Plans ("IEPs") that were completed by officials at Plaintiff's schools. The ALJ discussed the ETR and IEPs, noting that they reflected deficits in verbal comprehension and that Plaintiff mainly kept to himself. (R. 26–27.) Plaintiff argues that the ALJ engaged in "cherry picking" of these school documents and failed to follow SSR 11-2p by neglecting to mention the extra help and accommodations that were afforded to Plaintiff, such as extra time to complete assessments and assignments, and needing to complete only 50–75% of his assessments and assignments to graduate. (Statement of Errors 13–15, ECF No. 12; Reply 4–6, ECF No. 15.)

SSR 11-2p pertains to documenting and evaluating disability in young adults (*i.e.*, individuals between the ages of 18 and 25). The ruling provides that "[t]he abilities, skills, and behaviors that young adults use to do basic work activities are essentially the same as those that older adolescents use for age-appropriate activities," and therefore "the evidence we consider

7

when we make disability determinations for young adults is generally the same as, or similar to, the evidence we consider for making disability determinations for older adolescents under title XVI." SSR 11-2p, 2011 WL 4055665, at *4 (S.S.A. Sept. 12, 2011). "Because the abilities, skills, and behaviors are essentially the same, the same considerations for evaluating limitations in an older adolescent also apply to young adults." *Id.* Accordingly, the ruling provides that a variety of evidence from school programs, including IEPs, psychosocial supports, highly structured or supportive settings, extra help, and accommodations, may be relevant in determining the severity and impact of a young adult's impairments. *Id.* at *5–9. However, the ruling also makes clear that the rules applicable to adult disability claims also apply to claims by young adults undergoing a disability redetermination after attaining the age of 18. *Id.* at *2 ("We also use adult rules to make disability determinations or decisions . . .[w]hen a child who is receiving title XVI childhood disability benefits attains age 18 and must undergo a disability redetermination.").

The undersigned finds no error with the ALJ's application of SSR 11-2p. The ruling requires only that the ALJ consider relevant school records; it does not require the ALJ to adopt any limitations that might be suggested by those records. Here, the ALJ addressed the ETR and IEPs within the written decision. That the ALJ did not discuss these records in as much detail as Plaintiff would have liked does not mean that the ALJ failed to consider them. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 435, 453 (6th Cir. 1999). Moreover, because the ALJ's RFC is supported by the substantial evidence outlined above, it must be affirmed, even if the record contains evidence that would support a different result. *See*

*Emard*, 953 F.3d at 849 (where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion"). For the same reason, the undersigned is not persuaded that the ALJ "cherry-picked" the evidence on which she relied. An allegation of "cherry picking" "is seldom successful because crediting it would require a court to reweigh record evidence." *DeLong*, 748 F.3d at 726; *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Plaintiff's remaining arguments are unavailing. Plaintiff contends that the ALJ erred by relying on an unsigned, undated function report that indicated Plaintiff did not need reminders for grooming, taking medications, and going places, and that he had issues with frustration when following instructions. (R. 22, citing R. 290–97.) As the function report was written in the first person, it was reasonable for the ALJ to conclude that it was completed by Plaintiff himself. (*Id.*) Plaintiff argues that, even if the function report were completed by Plaintiff, the ALJ should not have relied on it because Plaintiff is an unreliable source of information about his mental impairments, and that instead, the ALJ should have relied on a function report completed by Plaintiff's grandmother, with whom he lived for many years. (Statement of Errors 16–20, ECF No. 12; Reply 6, ECF No. 15.) But again, the ALJ's RFC was supported by other substantial evidence in the record, even without accounting for Plaintiff's function report, and the RFC must therefore must be affirmed.

Finally, Plaintiff objects that the ALJ failed to include in the RFC the "occasional" interaction limitation opined by the state agency reviewers. However, the Commissioner correctly points out that the ALJ included the "occasional" limitation in her hypothetical

question to the VE, who opined that someone matching that hypothetical description could perform the jobs noted above. (*See* Hearing Testimony, R. 57–58.) Accordingly, because the ALJ relied on the VE's testimony in determining that Plaintiff was not disabled, any failure to include the "occasional" limitation in the ALJ's written decision was harmless. *See Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983) (procedural lapses by an administrative agency "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses").

## V.     DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision **is AFIRMED**.

    **IT IS SO ORDERED.**

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE